Donald A. GUERRIERO, Plaintiff,

v.

Honorable George P. SCHULTZ, Defendant.

Civ. A. No. 82–0921.

United States District Court, District of Columbia.

Feb. 23, 1983.

John Geraghty, Arlington, Va., for plaintiff.

John W. Polk, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

■ This matter is before the Court on defendant's motion for dismissal at the close of plaintiff's case pursuant to Fed.R. Civ.P. 41(b) in a non-jury action for employment discrimination. Upon the findings and for the reasons hereinafter set forth, the Court will grant defendant's motion.[1]

Plaintiff Guerriero is a 47-year-old foreign service officer who was separated from the Service on February 13, 1980, for cause by Cyrus Vance, defendant's predecessor as Secretary of State, pursuant to Section 637(a) of the Foreign Service Act of 1946, 22 U.S.C., § 1007(a). Guerriero had pursued a modestly successful career as a foreign service officer since 1966 which would likely have continued to an honorable and seasonable retirement but for the revelation of his off-duty conduct on a certain occasion

in December, 1976, in Montevideo, Uruguay, where he had served as a labor/political officer for several years. Reports of that conduct prompted an investigation by Department of State security officials and resulted in a hearing before an administrative law judge upon whose findings (but against whose recommendation) the Board of the Foreign Service determined to recommend and the Secretary to effect Guerriero's dismissal from the Service.

No issue of judicial review of the administrative proceedings is presented in this action other than as the findings may bear upon plaintiff's only claim here that his dismissal from the Service was brought about by unlawful discrimination against him because of his "handicaps"—acute alcohol addiction and a schizoid personality disorder first diagnosed following his return from Uruguay but extant nevertheless for years—which may or may not have been productive to some extent of the conduct in question.[2] Guerriero alleges that those psychological deficits, presently in remission—he joined AA and has been abstemious since, and his schizoid traits are responding to psychotherapy—render him a handicapped individual within the meaning of the Rehabilitation Act of 1973, *as amended*, 29 U.S.C., § 701 *et seq.*, and cannot be made the basis of adverse personnel actions if he is otherwise qualified and his handicaps can be accommodated.[3] Defendant disputes the diagnoses and their characterization as "handicaps," but he also asserts that the conduct alone is the sole reason for the

---

1. In ruling on a motion to dismiss at the close of plaintiff's case the Court is not required to view the evidence in the light most favorable to the plaintiff. *Woods v. North American Rockwell Corporation*, 480 F.2d 644 (10th Cir.1973); *Ellis v. Carter*, 328 F.2d 573 (9th Cir.1964). It need only weigh all the evidence presented and resolve any conflicts therein, *Pan American World Airways v. Continental Bank*, 435 F.Supp. 642 (D.C.Pa.1977), although the motion may be granted, of course, only when the facts and the law as a whole demonstrate that the plaintiff is not entitled to relief. Fed.R.Civ.P. 41(b).

2. The parties have stipulated that the conduct did, in fact, take place on or about December 17, 1976, at approximately 2:00 a.m. in a public

bar in the presence of at least one spectator, and that it involved sex acts between Guerriero and three or four local prostitutes which might, in more inhibited times or places, be regarded as abnormal. It is also undisputed, but not stipulated, that Guerriero had been drinking at the time. The Secretary of State deemed the circumstances to be "not extenuating, taking into account the high standards of behavior expected of the Foreign Service. . . ."

3. Plaintiff has not alleged a violation of any rights he may have possessed under Section 201 of the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, 42 U.S.C., § 4561.

dismissal (and would be irrespective of its relationship to psychopathology of any nature).

The Rehabilitation Act of 1973 was the "first major federal statute designed to provide assistance to the whole population of handicapped persons" in the United States. *Shirey v. Devine,* 670 F.2d 1188, 1193 (D.C. Cir.1982). Among other things it prohibited discrimination against "otherwise qualified handicapped individuals" in federally funded activities, 29 U.S.C., § 794, and amendments enacted in 1978 made the entire private enforcement apparatus of Title VII of the Civil Rights Act of 1964 available to alleged victims of such discrimination, including federal employees. 29 U.S.C., § 794a (1978); *Shirey v. Devine, supra,* at 1195–98.

At the outset the Court has some doubt as to whether Congress intended the anti-discriminatory provisions of the Rehabilitation Act to apply with full force to the Foreign Service if the result would be at variance with its own governing statute, no matter the extent to which disabled foreign service officers might benefit. The Service is *sui generis* to the federal bureaucracy, a "relatively small, homogeneous, and particularly able corps of ... officers" which, in another context, has been held exempt from legislation having similar humanitarian goals. *See Vance v. Bradley,* 440 U.S. 93, 102, 99 S.Ct. 939, 945, 59 L.Ed.2d 171 (1979).

It is not necessary, however, to decide if the Rehabilitation Act inhibits the treatment of foreign service officers to the same extent it does the remainder of the Civil Service, because, upon the familiar Title VII analysis, plaintiff has failed to carry his *prima facie* burden of proof of the Secretary's discriminatory motive or his own qualification for retention. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973).

The elements of a handicap discrimination case are: (1) a "handicap" within the meaning of that term as used in the Act; (2) qualification for the position at issue in all other respects; and (3) exclusion from the position "solely by reason of the handicap." 29 U.S.C., § 794; *see Prewitt v. United States Postal Service,* 662 F.2d 292 (5th Cir.1981); *Doe v. New York University,* 666 F.2d 761 (2d Cir.1981).

The evidence now before the Court establishes *prima facie* that plaintiff has a schizoid personality disorder and is an alcoholic; that he is responding or has responded favorably to appropriate treatment for both (although he was for a time required to remain in the U.S. where therapy was available); and that either or both conditions can be regarded as handicaps within the meaning of the Act.[4] It also establishes, however, that the Board of Foreign Service which recommended Guerriero's separation from the Service, and the Secretary of State who accepted and acted in accordance with that recommendation, did so because they found Guerriero's conduct of such an "immoral, notoriously disgraceful, and prejudicial" character as to have compromised his ability to represent the United States abroad,[5] proceeding expressly, however, upon the determination that Guerriero was *not* an alcoholic. They apparently accorded no particular significance one way or another to the possibility of a personality disorder. Thus, although the plaintiff's evidence may show the Board and the Secretary to have been in error in concluding that Guerriero was *not* handicapped, the Act only prohibits discrimination against him because he is. At best plaintiff has demonstrated a misassessment of the extent of his affliction rather than a conscious effort to to separate him because he was afflicted.

---

**4.** Although the Court concludes they would be irrelevant, the evidence at this point would also support findings that plaintiff's conduct was attributable, at least in part, to those conditions, and that the etiology of the alcoholism is to be found, in part, in the personality disorder.

**5.** The Secretary's reasons have to do with the likelihood of the conduct's becoming known within and without the diplomatic community, particularly in countries in which the threshold of tolerance for it might be less than at home. Whether they are valid is similarly irrelevant in the light of his express reliance upon the finding of an absence of a handicapping condition.

Guerriero argues that direct evidence of unlawful discrimination is seldom to be found and should not, therefore, be regarded as indispensable to a *prima facie* case. But he concedes that circumstantial evidence relied on its stead must at least give rise to an inference of its presence. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1091–92, 67 L.Ed.2d 207 (1981). He contends that the evidence of alcoholism and personality disorder he presented to the Department of State in the course of his separation proceedings was so convincing that its rejection by the administrative law judge, the Board, and the Secretary requires an inference here that they acted in bad faith. The Court concludes such an inference is unwarranted in the light of the Department's own efforts to ascertain Guerriero's true condition and the consideration given the issue by the administrative law judge. But even if such an inference were to be drawn, a disingenuous determination that a handicap does not exist is not the equivalent of proof that it was covertly found and then made the basis of an illegal personnel action by the Secretary of State.

■ Finally, whatever his present state of health plaintiff's evidence proves him to have been otherwise unqualified for the position of a foreign service officer in February of 1980, because of his self-acknowledged need for continuing therapy at the time. His condition precluded (at least for some substantial period) his accepting an assignment abroad because he required support services available only in the United States. But overseas service is an essential condition of employment in the Foreign Service. 22 U.S.C., § 3984; *Vance v. Bradley,* 440 U.S. 93, 107, 99 S.Ct. 939, 948, 59 L.Ed.2d 171 (1979). Plaintiff was, therefore, not an "otherwise qualified" individual within the meaning of the Rehabilitation Act because he could not meet the requirements of the Service in spite of his handicap. *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

For the foregoing reasons it is, therefore, this 23rd day of February, 1983,

ORDERED, that defendant's motion to dismiss the complaint is granted; and it is

FURTHER ORDERED, that the complaint is dismissed with prejudice.